**READING SCHOOL DISTRICT,**
Petitioner

v.

**DEPARTMENT OF EDUCATION,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued April 4, 2005.

Decided June 6, 2005.

Richard L. Guida, Wyomissing, for petitioner.

Ann G. St. Ledger, Asst. Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge.

OPINION BY President Judge COLINS.

We consider the appeal of the Reading School District (RSD) from the Department of Education's (Department) dismissal, for failure to state a permissible ground for appeal, of RSD's appeal of the Department's Bureau of Assessment and Accountability's (Bureau) determination that six schools in the RSD failed to make annual yearly progress (AYP) under the federal No Child Left Behind Law (the Act[1]) and subjecting the schools to either level 1 or level 2 sanctions. We find the appeal policy to be an unconstitutional encroachment on due process, vacate the Department's determination, and remand for consideration of the issues raised by RSD in its appeal.

Prior to the 2003–2004 school year, the Department informed RSD that certain of its schools had failed to make AYP as that is defined in the Act. RSD's initial appeal, based upon the Department's implementation of the Act in the Pennsylvania Consolidated State Accountability Workbook, was filed pursuant to our Administrative Agency Law, and was denied by the Department. We denied RSD's appeal of the Department's denial on the grounds that RSD had failed to demonstrate that the Act created an unfunded mandate and that the technical assistance that RSD had requested would be furnished only to schools that were actually sanctioned, not that were subject to sanction.[2]

On January 29, 2004, RSD sent to the Department plans that RSD had developed to bring into compliance those schools designated by the Department as failing to meet AYP. The plans were accompanied by letters addressed to the Department that showed the estimated cost of the plans submitted to be in excess of $26,000,000.00 for the 2003–2004 school year, and that RSD expected to receive slightly in excess of $8,000,000.00 in federal funding. RSD asked the Department for additional funds to meet that shortfall. No response had been received to RSD's request as of the filing of its brief in this matter.

On July 15, 2004, the Department informed RSD that the District as a whole and six of its individual schools had failed to achieve AYP for the 2003–2004 school year and would be placed on either level 1 or 2 sanctions for the 2004–2005 school year. On or about August 19, 2004, RSD, after the required letter appeals, filed an administrative agency appeal of that determination on the grounds that the Department had 1) created an unfunded mandate that is prohibited by 20 U.S.C. § 7907(a); 2) sanctioned schools that had not received federal funds designed to implement the Act; 3) failed to provide assessment tests in Spanish; and 4) failed to provide mandatory technical assistance to schools that had been sanctioned.

The Bureau responded to RSD's appeal with a motion to dismiss that appeal on the ground that the appeal violated the Department's new policy for the appeal of determinations of failure to achieve AYP. The Department's new policy allows appeals based only on assertions that 1) the data upon which the Department made the determination were incorrect; 2) sig-

---

1. 20 U.S.C. § 6301 et seq.

2. *Reading School District v. Department of Education,* 855 A.2d 166 (Pa.Cmwlth.2004)

nificant growth has been made toward meeting the goals of the Act; or 3) an unforeseen circumstance beyond a district's control prevented it from achieving AYP. The Secretary of Education granted the Bureau's motion and dismissed RSD's appeal. This appeal followed.

The question we are asked to determine is whether the Department's limits on the grounds upon which it will allow school districts to appeal its determinations of failure to reach AYP violates the due process guarantees of the Fourteenth Amendment of the U.S. Constitution and Article 1, Sections 1 and 11 of the Pennsylvania Constitution.[3]

RSD is precluded from appealing the determination of the Department to the federal government because, according to the provisions of the Act, the individual states are required to develop their own plans to implement the Act, and whether local school districts have failed to achieve AYP is a matter for each state to determine, not the federal government. Thus, any challenge to a determination that a school or schools within a district has or have not achieved the AYP required by the Act must be directed to the state agency in charge of education, here the Department, and cannot be directed to the federal government. RSD argues that its due process rights have been violated because the Department has effectively foreclosed RSD from appealing any substantive issue.

Due process of law is a bedrock principle of our democracy. What we are asked to determine here is how that principle applies to proceedings before administrative agencies in our Commonwealth such as the Department.

We addressed the question of the requirement of due process before administrative agencies in the Commonwealth in *School District of Philadelphia v. Pennsylvania Milk Marketing Board,* 683 A.2d 972, 978 (Pa.Cmwlth.1996) *petition for allowance of appeal denied,* 548 Pa. 642, 694 A.2d 625 (1997), *cert. denied,* 522 U.S. 933, 118 S.Ct. 338, 139 L.Ed.2d 262 (1997), where we said,

There is no question that due process is required in all hearings before administrative agencies of the Commonwealth. "Due process is a concept incapable of exact definition. Rather, it is a flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant." However, "a fair and impartial tribunal in the first instance is a cornerstone of our notion of due process."

(citations omitted.)

The amount of due process available to a party is not limited in a proceeding before an administrative agency. In *Allegheny County Health Department v. Ligons,* 16 Pa.Cmwlth. 74, 329 A.2d 878, 879 (1974), we said,

We have held in other cases that local regulatory agencies must provide to any party charged with a violation of the law the same due process protection provided citizens in any other kind of legal action. In this case, the burden was upon ACHD in the de novo hearing before the court below to prove all of the elements, both procedural and substantive, necessary to support its adjudication.

(citations omitted.)

Our Administrative Agency Law specifically permits a party appearing before

---

**3.** Our standard of review of decisions of the Secretary of the Department of Education is to determine if an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Chester Upland School District v. Brown,* 67 Pa.Cmwlth. 540, 447 A.2d 1068 (1982).

such an agency to question the statute underlying the party's appeal. 2 Pa.C.S. § 703(a) states,

### § 703. Scope of review

(a) General rule.—A party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal

. . . .

The "statute" in question here is the Act, a federal law that is not a creature of our legislature. However, we find no error in allowing RSD to question the validity of the Department's implementation of the Act as it applies to RSD because the Department is acting pursuant to powers granted to it by the Act.

■ The Department attempts to justify its appeal policy by stating on page one of the document describing the policy that, "According to federal regulations, an appeal can be granted only if the 'proposed identification is in error for statistical or other substantive reasons.' 34 C.F.R. § 200.31." The section cited by the Department reads, in full,

§ 200.31 Opportunity to review school-level data.

(a) Before identifying a school for school improvement, corrective action, or restructuring, an LEA must provide the school with an opportunity to review the school-level data, including academic assessment data, on which the proposed identification is based.

(b)(1) If the principal of a school that an LEA proposes to identify for school improvement, corrective action, or restructuring believes, or a majority of the parents of the students enrolled in the school believe, that the proposed identification is in error for statistical or other substantive reasons, the principal may provide supporting evidence to the LEA.

(2) The LEA must consider the evidence referred to in paragraph (b)(1) of this section before making a final determination.

(c) The LEA must make public a final determination of the status of the school with respect to identification not later than 30 days after it provides the school with the opportunity to review the data on which the proposed identification is based.

LEA in the quoted section stands for local educational agency, a school district, 34 C.F.R. § 200.1(a). The Department, however, for purposes of establishing its appeal policy, interprets LEA to mean the agency performing its role. The Act, though, uses the acronym SEA or state educational agency to describe entities such as the Department, 34 C.F.R. § 200.4(a). In addition, it is clear from a plain reading of this part of the Act that LEA refers to a school district, not a state department of education as the parents or school principals in (b)(1) would report to a school district, not to the Department.

The Department concedes that our constitution guarantees the right of appeal from an administrative agency decision but insists that its appeal policy is not inconsistent with our decision in *Manheim Township School District v. State Board of Education*, 1 Pa.Cmwlth. 627, 276 A.2d 561, 564 (1971), in which we held that appeals of administrative agency decisions made pursuant to legislation that does not limit the right of appeal are subject to "broad certiorari," The Department says this about that in its brief, however,

Entitlement to broad appeal rights (i.e., an appeal that is unlimited in scope) is applicable to appeals *from* an agency decision. This principle, however, does not apply to matters in which a party is requesting that the Secretary of an agency reconsider the decision of an

agency employee. Thus the issue at bar is whether the Department's internal procedures for reviewing the AYP determinations of its staff are legally sufficient.

(Department's brief, page 18.)

Having somehow found, but not defined, the remarkable distinction between decisions made by an agency and those made by its employees, the Department reasons that its policy "clearly passes constitutional muster since the limits set forth in the policy are consistent with those articulated in [the Act]." (Department's brief, p. 18.) As we have seen, the limits set forth in the policy are *not* consistent with those articulated in [the Act]. The Department has misconstrued the Act to define those limits for its own purposes, and the limits the Department has created are not consistent with due process in the Commonwealth. The Department has established a closed loop in which it cites federal legislation from which RSD may not appeal as its authority for limiting RSD's right to appeal the determinations it makes pursuant to its interpretation of that federal legislation. This is not due process.

The Department committed a clear violation of RSD's due process rights when it limited the grounds upon which RSD could appeal the Bureau's determination by intentionally misinterpreting the Act. A simple exercise in statutory interpretation reveals that the Department redefined the meaning given to the acronym LEA in the Act to suit its own purpose of limiting the appeals of its decisions under the Act.

Accordingly, we find that the Department's appeal policy is an unconstitutional restraint on due process, vacate the Department's order dismissing RSD's appeal, and remand this matter to the Department with instructions to hear and determine the issues raised by RSD in its appeal.

## ORDER

AND NOW, this 6th day of June 2005, upon finding that the policy by which the Department of Education hears appeals of its determinations under the No Child Left Behind Law is an unconstitutional infringement on due process, the Order of the Secretary of the Department of Education dismissing Reading School District's appeal is VACATED, and this matter is remanded to the Department with instructions to hear and determine the issues raised by RSD in its appeal.

Jurisdiction relinquished.